## COMMISSIONER OF INTERNAL REVENUE v. STARR BROS., Inc.

### No. 206, Docket 22559.

United States Court of Appeals
Second Circuit.

Argued April 15, 1953.

Decided May 29, 1953.

Charles S. Lyon, H. Brian Holland, Asst. Attys. Gen., Ellis N. Slack, A. F. Prescott and Morton K. Rothschild, Sp. Assts. to the Atty. Gen., for petitioner.

Louis C. Wool, New London, Conn., for respondent.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

The question presented for decision is whether a sum of $6,394.57 received by the taxpayer, Starr Brothers, Inc. from a manufacturer of drugs for agreeing to terminate a contract under which the taxpayer had been granted the exclusive right to sell the manufacturer's products in New London, Connecticut, should be considered capital gain under § 117 of the Internal Revenue Code, 26 U.S.C.A., or ordinary income under § 22. The Tax Court held it to be capital gain.

The facts are not in dispute. The taxpayer conducted a retail store in New London. In 1903 it made a contract with United Drug Company, a manufacturer of drugs, whereby it was appointed United's "special selling agent" in New London. United agreed not to sell its products to any other dealer in that city and the taxpayer agreed to sell the products at retail only and at not less than prices set by United. The agency contract did not require the agent to render personal services; nor did it create an employer-employee relationship. In 1943 United paid the taxpayer $6,394.57 for agreeing to the termination of the 1903 contract and entering into a new and nonexclusive agency contract, United expressly reserving "the right to grant one or more franchises for the sale of its merchandise in the City of New London, Connecticut, to whomever it may choose."

Subdivision (a)(1) of section 117 defines capital assets. Subdivision (a)(4) defines "long-term capital gain" as gain from the

674

"sale or exchange" of a capital asset. Subdivision (a)(10)(A) defines "net capital gain", in the case of a corporation as "the excess of the gains from sales or exchanges of capital assets over the losses from such sales or exchanges". Undoubtedly the taxpayer's rights under the 1903 contract were property; and we will assume arguendo, as does the Commissioner, that they were a capital asset. The decisive issue is whether there was a "sale or exchange" of such capital asset when the contract was terminated in 1943. To refer to the contract as a grant of a "franchise" tends, we think, to becloud analysis of the legal relations. What the taxpayer gave in return for the cash payment was a release of United's contract obligations, chief of which was its promise not to sell its products to other dealers in New London. Such release not only ended the promisor's previously existing duty but also destroyed the promisee's rights. They were not transferred to the promisor; they merely came to an end and vanished. A closely analogous situation exists when the holder of a note surrenders it to the maker on receiving payment. In Bingham v. Commissioner, 2 Cir., 105 F.2d 971, 972, we said:

> "What may have been property in the hands of the holder of the notes simply vanished when the surrender took place and the maker received them. He then had, at most, only his own obligations to pay himself. Any theoretical concept of a sale of the notes to the maker in return for what he gave up to get them back must yield before the hard fact that he received nothing which was property in his hands but had merely succeeded in extinguishing his liabilities by the amounts which were due on the notes. There was, therefore, no sale of the notes to him in the ordinary meaning of the word and no exchange of assets for assets since the notes could not, as assets, survive the transaction. That being so, such a set-

tlement as the one this petitioner made involved neither a sale nor an exchange of capital assets within the meaning of the statute."

Another analogy may be found in Beals' Estate v. Commissioner, 2 Cir., 82 F.2d 268 which held that payment received for a covenant not to engage in competitive business was ordinary income, not gain realized on disposal of a capital asset.[1] Here the converse situation is presented,—payment for the release of such a covenant.

In holding that the taxpayer made a sale of its 1903 contract the Tax Court relied particularly upon Jones v. Corbyn, 10 Cir., 186 F.2d 450, where cancellation of an exclusive general insurance agency contract was held to be a "sale" of a capital asset. With due deference to the majority opinion, we respectfully agree with Judge Phillips' dissent. The Third Circuit has also given a very broad construction to "sale or exchange". See Commissioner v. Golonsky, 3 Cir., 200 F.2d 72, involving surrender of a lease to the lessor.[2] Our own decision in McAllister v. Commissioner, 2 Cir., 157 F.2d 235, certiorari denied 330 U.S. 826, 67 S.Ct. 864, 91 L.Ed. 1276, where transfer by a life tenant to the remainderman for a sum of money was held to constitute a sale, is also cited as inconsistent with the conclusion that termination of the 1903 contract was not a sale. That case was decided upon the theory that it was within the rule of Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 rather than that of Hort v. Commissioner, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168. Whether that distinction is valid we need not now consider. In any event, to hold the life tenant's transfer of possession of income-producing property a "sale" puts less strain upon the ordinary meaning of that term than does a holding that the taxpayer's release of United's negative covenant is a sale. When Congress has wished to tax as capital gains receipts which would not fall within the ordinary meaning of "sale or exchange" of assets, it

---

1. To the same effect are Salvage v. Commissioner, 2 Cir., 76 F.2d 112, affirmed Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Cox v. Helvering, 63 App.D.C. 264, 71 F.2d 987.

2. The Commissioner's brief states that a petition for certiorari will probably be filed.

has dealt specifically with such transactions, as in subdivisions (f) and (g) of section 117. See Helvering v. William Flaccus Leather Co., 313 U.S. 247, 251, 61 S.Ct. 878, 881, 85 L.Ed. 1310. We regard as significant the absence of any statutory provision treating the termination or modification of a selling agency contract as a sale or exchange.

The decision is reversed and the cause remanded for recomputation of the tax.