**GENERAL ARTISTS CORP. v. COMMIS-
SIONER OF INTERNAL REVENUE.**

No. 209, Docket 22562.

United States Court of Appeals
Second Circuit.

Argued April 15, 1953.

Decided June 18, 1953.

Miller & Miller, Bernard L. Miller and Morton Miller, New York City (Harry J. Winick and Morton Miller, New York City, of counsel), for petitioner.

H. Brian Holland, Ellis N. Slack, A. F. Prescott and Morton K. Rothschild, Washington, D. C., for respondent.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

As the facts are stated in the opinion of the Tax Court, 17 T.C. 1517, we shall only briefly review them here:

Taxpayer had contracts with a popular singer (through managing agents representing him) by which it was his exclusive booking-agent and entitled to receive 10% of his earnings from such bookings. In December 1943, it purported to sell these contracts to MCA Artists, Ltd., another booking agent, which we shall call "MCA." The agreement between taxpayer and MCA provided that, after the assignment of contracts, they should be cancelled and MCA should make new contracts with the singer, and further, that MCA should pay taxpayer a percentage of the compensation received from the singer during stated periods following the transfer. The taxpayer

reported, for the fiscal year ending October 31, 1944, a long-term capital gain of $41,780.88, which it attributed to its "sale" of the original contract with the singer. The Commissioner ruled that said amount constituted "ordinary income" (under § 22 of the Internal Revenue Code) and not long-term capital gain (under § 117). The taxpayer disputes this finding as to $38,860.53 of this sum. The Tax Court also found a deficiency in excess profits tax of $20,053.81. Taxpayer claims there is no liability for excess profits tax, because of revised excess profits credits determined by the Excess Profits Tax Council.

■ 1. We are unwilling, for the following reasons, to agree that there was a "sale" here as that word is used in the Code:[1] (1) Exhibit 5, which itemizes the amount of income in question, shows that $5,740 resulted from bookings made pursuant to options exercised by a sponsor on contracts made by taxpayer with the sponsor prior to the transfer, and that $9,729 was attributed to performances under bookings which had been arranged by the taxpayer before the transfer. Thus at least $15,469 of the sum in dispute was the product of arrangements effected by the taxpayer previous to the transfer. The Tax Court was correct in saying that petitioner "was entitled to that income * * * and could not, by assigning the income, relieve itself of tax on that income." (2) As to amounts which may not have been produced by taxpayer's efforts, our recent decision in Commissioner v. Starr Bros., 2 Cir., 1953, 204 F.2d 673 is pertinent. There a manufacturer of drugs agreed to terminate a contract under which the taxpayer had the exclusive right to sell manufacturers' products in a certain area. In holding that the amounts received in consideration of the taxpayer's agreement to terminate were ordinary income, we said the decisive issue was "whether there was a 'sale or exchange' of such capital asset when the contract was terminated in 1943." We held that the release of the negative covenant not to sell to another was not a "sale" and pointed out: "When Congress has wished to tax as capital gains receipts which would not fall within the ordinary meaning of 'sale or exchange' of assets, it has dealt specifically with such transactions, * * *"

It might be suggested that the instant case differs from that of Starr Bros. because the latter involved a release of a binding negative covenant to the obligor, whereas here there was a transfer to a third person of the rights under the covenant. But we think the correct view is that here there was a release to the obligor of a negative covenant in order to allow a new covenant to be made with the third party. For a mere assignment of rights against the singer would not have satisfied MCA. It wished to be the singer's exclusive booking-agent and hence had to make new contracts with him: The agreement provided that such new contracts should be made and "be deemed to supersede, cancel, and take the place of" taxpayer's contracts with the singer.

■ 2. Since the Excess Profits Tax Council's jurisdiction in § 722 matters is final, subject to the authority of the Commissioner,[2] and the Commissioner had not passed on the Council's findings, the Tax Court correctly held that it could not apply this relief.[3]

Affirmed.

---

1. 26 U.S.C.A. § 117(a) (4): *"Long-term capital gain.* The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income; * * *."

2. Commissioner's Mimeograph No. 6044, approved by the Secretary of the Treasury July 30, 1946, reprinted at 463A CCH Standard Federal Tax Reporter § 5142A.-18.

3. There is no proof in the record that the Commissioner has unreasonably delayed. We express no views as to what remedies would be available to the taxpayer, if there were such unreasonable delay.