COMMISSIONER OF INTERNAL REVENUE

v.

GOFF.

COMMISSIONER OF INTERNAL REVENUE

v.

HIRSCHWALD.

COMMISSIONER OF INTERNAL REVENUE

v.

MARKLE et al.

COMMISSIONER OF INTERNAL REVENUE

v.

ROSEN.

COMMISSIONER OF INTERNAL REVENUE

v.

SANSON.

Nos. 11253–11257.

United States Court of Appeals, Third Circuit.

Argued April 20, 1954.

Decided May 12, 1954.

Morton K. Rothschild, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Herman H. Krekstein, Philadelphia, Pa. (Gerald Krekstein, Philadelphia, Pa., on the brief), for respondents.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The one question in this case is whether a gain of $142,224.07 realized by the taxpayers is to be taxed as ordinary income or is subject only to the capital gains tax provided for in section 117 (a)(4) of the Internal Revenue Code.[1] The Tax Court upheld the taxpayers' contention in an opinion which sets out the facts as stipulated by the parties and found by the court. 20 T.C. 561. Detailed recital will not be repeated here.

1. "The term 'long-term capital gain' means gain from the sale or exchange of a capital asset held for more than 6 months, if and to the extent such gain is taken into account in computing net income * * *." 26 U.S.C.A. § 117(a) (4).

The taxpayers are members of a partnership named Saxon Hosiery Mills.[2] Saxon bought four hosiery manufacturing machines and installed them in a manufacturing plant.[3] The proprietor agreed to pay Saxon thirty cents for each dozen of hosiery manufactured on the machines; agreed to turn out a minimum of 750 dozen pairs a week, for which Saxon was to pay a stipulated price; and, finally, agreed to use the machines only to produce goods for Saxon. In 1946 Artcraft Hosiery Company, the then proprietor of the knitting mill, paid to Saxon a quantity of common and preferred stock in Artcraft in return for a transfer to Artcraft of all Saxon's rights in the agreement outlined above. The gain from this transaction is what the Commissioner says is to be taxed to each of the respondents here as ordinary income.

We agree with the Tax Court. If Saxon had transferred its rights under the contract to a third party, as the agreement expressly authorized it to do, it seems pretty clear to us that the gain to the transferor would be taxed as a long-term capital gain, assuming that it had been held for the requisite length of time. Cf. Sutliff v. Commissioner, 1942, 46 B.T.A. 446.

The Commissioner concedes that the rights which Saxon had under the contract constituted a capital asset. Where he balks is refusing to consider the transfer of Saxon's interest in the contract to Artcraft as a sale or exchange. But that those rights were valuable is undisputed as is clearly shown by the price they brought when Saxon gave them up. That the rights to be subject to the sale or exchange provisions in the revenue code do not need to be tangible, see authority cited in Com-

missioner of Internal Revenue v. Golonsky, 3 Cir., 1952, 200 F.2d 72, 74 note 4, certiorari denied, 1953, 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366. We do not see in principle how the person to whom a tangible right is transferred can affect the question whether the transfer is a sale or exchange.

In this conclusion we are supported by authority both in this Court and others. Jones v. Corbyn, 10 Cir., 1950, 186 F.2d 450 (surrender to insurance company of right to lifetime agency); Commissioner of Internal Revenue v. Golonsky, supra (surrender of premises to lessor before lease expired); Commissioner of Internal Revenue v. Ray, 5 Cir., 1954, 210 F.2d 390 (release of lessor from his covenant not to rent to a certain type of store).

The Commissioner finds comfort in two decisions of the Second Circuit. They are: Commissioner of Internal Revenue v. Starr Bros., 1953, 204 F.2d 673, and General Artists Corporation v. Commissioner, 205 F.2d 360, certiorari denied, 1953, 346 U.S. 866, 74 S.Ct. 105. But the last word on the subject in the Second Circuit is Commissioner of Internal Revenue v. McCue Bros. & Drummond, Inc., 1954, 210 F.2d 752, which held that payment made by a lessor to a lessee so that he would vacate the premises was a capital gain. The Starr and General Artists decisions were distinguished on the ground that the rights there involved were less substantial. Whether the Second Circuit cases are in harmony is not a matter for us to decide. The last decision is certainly in accord with the cases cited above, and we think it is right.

As to this case there is certainly no doubt that the right that Saxon had to the exclusive product of these four

2. Except Barbara F. Markle, who filed a joint return with her husband, Thomas V. Markle.

3. The original contract between Saxon and the operator of the mill where the hosiery was manufactured was with a concern named Pickwick Hosiery Mills, Inc.

Pickwick was subsequently succeeded by Artcraft Hosiery Co., which took over Pickwick's rights and obligations in the contract. The opinion will deal with the situation as though Artcraft had been the original party to the contract with Saxon.

machines was a substantial right and, if it is important, it was a right connected with the use of specific tangible property, that is, the machines themselves.

The decision of the Tax Court will be affirmed.

