THE PITTSTON COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53832.    Filed August 31, 1956.

*Joseph J. Pugh, Esq.*, for the petitioner.
*Max J. Hamburger, Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* The petitioner contests a determination of deficiency in income tax for the year 1949 in the amount of $190,147.49. The only question is whether the amount of $500,000 received in 1949 by Pattison & Bowns, Inc., a wholly owned subsidiary of petitioner, from the Russell Fork Coal Company, is taxable as capital gain or ordinary income. All of the facts have been stipulated.

On January 25, 1944, Pattison & Bowns and Russell Fork entered into a written contract which provided in part as follows:

That in consideration of the mutual covenants and conditions herein set forth and of an agreement executed and delivered simultaneously with the execution and delivery of this agreement, it is agreed as follows:

(1) Subject to the provisions of Paragraph 2 of this agreement the Seller [Russell Fork] agrees to sell to the Buyer [Pattison & Bowns], and any other affiliated person, partnership or corporation whom and which the Buyer may from time to time designate in writing, F. O. B. the mine, all of the coal which shall be mined and sold for resale from the mining plant or plants which the Seller expects to install or does install upon its leased property in Pike County, Kentucky, as set forth in the agreement executed simultaneously herewith.

\*         \*         \*         \*         \*         \*         \*

(3) The title to all coal sold to the Buyer hereunder shall pass to the Buyer at the time said coal is loaded into cars or trucks at the mines for transportation and before transportation begins.

(4) The Buyer shall be entitled to and is hereby authorized to deduct a discount of 8% of the gross selling price on all coal purchased by it, which amount shall include all expenses and compensation of every kind of the Buyer and its designees and under no circumstances shall any affiliate of the Buyer be entitled as a wholesaler, jobber or otherwise to any additional discount, compensation and expenses all of which shall be included in the foregoing 8%, \* \* \*

\*         \*         \*         \*         \*         \*         \*

(6) The Buyer agrees for itself and its designees and binds itself and each of them that it and each of them will at all times have and maintain proper facilities and employees so as to be able efficiently to resell the said coal and agrees to endeavor with diligence and in every proper manner to resell the largest available amount of said coal at prices specified from time to time by the Seller, and further agrees to comply with all laws that are now in force, or may hereafter be enacted, and all valid rules and regulations thereunder relating to

the selling of coal or all other related or incidental matters. * * * if the Buyer and its designees, as the case may be, complies with the obligations binding upon it and them, then this agreement shall be irrevocable for a period of ten (10) years from this date and for such additional period of extension as is provided in Paragraph 3 of the agreement executed and delivered simultaneously with the execution and delivery of this agreement. * * *

On the same date, January 25, 1944, Pattison & Bowns and Russell Fork entered into another contract under the terms of which Pattison & Bowns agreed to lend to Russell Fork $250,000, which loan was to be repaid in periodic installments over a period of 10 years and was to bear interest at 4 per cent per annum.

During the period January 25, 1944, to October 14, 1949, Pattison & Bowns purchased from Russell Fork 1,959,563.15 tons of coal for $9,855,089.64 which it resold at a gross profit of $723,411.14. Pattison & Bowns carried out its agreement to lend Russell Fork $250,000 and it also made various additional advances on open account; these loans were finally liquidated by Russell Fork during 1948.

On October 14, 1949, Russell Fork acquired for $500,000 all of Pattison & Bowns' right and interest in the coal agreement of January 25, 1944. The transaction was reflected in a letter agreement dated October 14, 1949; the letter was sent to Russell Fork by Pattison & Bowns, and read as follows:

In consideration of the payment by you to us of the sum of Five Hundred Thousand Dollars ($500,000), receipt of which is hereby acknowledged, it is understood that you have as of this day acquired all of our right and interest in and to the agreement dated January 25, 1944 between us, which agreement provides for the exclusive right by Pattison & Bowns, Inc. to purchase all of the coal produced by you at your Russell Fork Mine, said contract expiring by its terms on January 25, 1954.

In its consolidated income tax return for the year 1949, petitioner reported the $500,000 as long-term capital gain. In the notice of deficiency the respondent determined that this amount "was not received as the result of a sale or exchange and therefore is reportable as ordinary income."

Subdivision (a) (1) of section 117 of the Internal Revenue Code of 1939 defines capital assets, with certain exceptions not here material, to mean "property held by the taxpayer (whether or not connected with his trade or business)." Subdivision (a) (4) defines "long-term capital gain" to mean "gain from the sale or exchange of a capital asset held for more than 6 months."

Respondent contends first that the rights which Pattison & Bowns acquired under the contract of January 25, 1944, did not constitute a capital asset. While he admits that Pattison & Bowns owned a "property right" in an abstract legal sense, and that had it been sold to a third party the proceeds of the sale would have been entitled to capital gains treatment, he argues that the "property right" was ex-

tinguished by agreement between the contracting parties and never matured into a capital asset. We are not impressed by this argument. The character of an asset is not governed by the disposition subsequently made of it. Under the contract of January 25, 1944, Pattison & Bowns acquired the right to purchase and sell the coal mined at Russell Fork's plants in Pike County for a period of 10 years. This was a valuable contractual right. In *Commissioner* v. *Goff*, 212 F. 2d 875, 876 (C. A. 3), the respondent conceded that contractual rights held by the taxpayers in those proceedings constituted capital assets, and contractual rights have been held to constitute capital assets in *Isadore Golonsky*, 16 T. C. 1450, affirmed 200 F. 2d 72 (C. A. 3), certiorari denied 345 U. S. 939; *Henrietta B. Goff*, 20 T. C. 561, affirmed 212 F. 2d 875 (C. A. 3), certiorari denied 348 U. S. 829; *Louis W. Ray*, 18 T. C. 438, affirmed 210 F. 2d 390 (C. A. 5), certiorari denied 348 U. S. 829; *Jones* v. *Corbyn*, 186 F. 2d 450 (C. A. 10). We see no justification for reaching a different conclusion in the instant proceeding.

The respondent's remaining contention is that, even if the right acquired under the contract of January 25, 1944, constituted a capital asset, the gain realized was not a capital gain because there was no "sale or exchange" of this asset as required by section 117 (a) (4). He urges that the $500,000 payment should be considered as having been made to extinguish the right of Pattison & Bowns to receive performance of Russell Fork's obligations under the contract, and that the extinguishment of this right was not a "sale or exchange." While we agree that the transaction did have the effect of extinguishing the right of Pattison & Bowns to performance and also of terminating the contract, this "does not negative the fact that the transaction may constitute a sale." *Commissioner* v. *Golonsky*, 200 F. 2d 72, 73 (C. A. 3). A sale is consummated when property is transferred by its owner for a stipulated price which is paid. In *Commissioner* v. *Starr Brothers, Inc.*, 204 F. 2d 673 (C. A. 2), and *General Artists Corporation* v. *Commissioner*, 205 F. 2d 360 (C. A. 2), affirming 17 T. C. 1517, certiorari denied 346 U. S. 866, cited by respondent, "no 'sale or exchange' within the meaning of the statute was found because the contractual right was not transferred, but was released and merely vanished." *Commissioner* v. *McCue Bros. & Drummond, Inc.*, 210 F. 2d 752, 753 (C. A. 2),[1] affirming 19 T. C. 667, certiorari denied 348 U. S. 829. Where, however, a contractual right is transferred for a valuable consideration and continues to exist as property of the transferee-payor, this and other courts have consistently held that there is

---

[1] Doubt as to whether the Second Circuit cases are in harmony was raised by the Court of Appeals in *Commissioner* v. *Goff*, 212 F. 2d at p. 876. Certiorari was sought by the Government simultaneously in the *Goff*, *Ray*, and *McCue* cases in an apparent effort to obtain clarification of the law in this field, but the Supreme Court refused to take the cases. 348 U. S. 829.

a "sale or exchange" and that any gain realized is a capital gain. *Commissioner* v. *McCue Bros. & Drummond, Inc., supra; Isadore Golonsky, supra; Henrietta B. Goff, supra; Louis W. Ray, supra; Jones* v. *Corbyn, supra; Walter H. Sutliff*, 46 B. T. A. 446.

By contract dated January 25, 1944, Russell Fork conveyed to Pattison & Bowns for valuable consideration the right to purchase and sell all of the coal mined at its plants in Pike County, Kentucky, at a specified discount. Thus Pattison & Bowns acquired a valuable right and interest in coal mined by Russell Fork. It retained this interest from January 25, 1944, to October 14, 1949. On the latter date Russell Fork paid Pattison & Bowns $500,000, and in exchange therefor Pattison & Bowns transferred to Russell Fork all of its right and interest in the contract dated January 25, 1944. As the result of this transfer Russell Fork acquired the right to sell its coal to whomsoever it chose at whatever terms it could arrange, a right that it did not possess during the period January 25, 1944, to October 14, 1949. On the authority of the cases last above cited, we hold that there was a "sale or exchange" of a capital asset and that petitioner correctly reported the gain of $500,000 as a long-term capital gain.

*Decision will be entered under Rule 50.*