MARC D. LEH AND L. WAIVE LEH, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DAVID E. BROWN AND CHRISTABEL H. BROWN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53878, 53879.   Filed March 11, 1957.

*James L. Wood, Esq.,* and *Barton B. Beek, Esq.,* for the petitioners in Docket No. 53878.

*David E. Brown, pro se,* in Docket No. 53879.
*George E. Constable, Esq.,* for the respondent.

894

OPINION.

RAUM, *Judge:* Section 117 (j) of the Internal Revenue Code of 1939 [1] accords capital gains treatment to gains from the sale or exchange of certain "property used in the trade or business" of a taxpayer. Petitioners contend that the right to purchase 2,250,000 gallons of gasoline per month, which Progress acquired from Olympic under the Progress-Olympic contract, was "property used in the trade or business" of Progress; that the transaction of July 26, 1950, constituted a "sale or exchange" of this property; and that gain of $183,330.50 realized was taxable as capital gain and not as ordinary income.

We agree with petitioners that the right of Progress to purchase 2,250,000 gallons of gasoline per month which it acquired under the Progress-Olympic contract falls within the definition of "property used in the trade or business" contained in section 117 (j). We do not agree that the transaction of July 26, 1950, constituted a "sale or exchange" of this property right to Olympic.

The petitioners argue that the rights of Progress under the Progress-Olympic contract were essentially the same as the rights of Olympic under the General-Olympic contract; that the Progress-Olympic contract was, in substance, an assignment from Olympic to Progress of a portion of Olympic's rights under the General-Olympic contract; that the transaction of July 26, 1950, was, in substance, a

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(j) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or (C) a copyright, a literary, musical, or artistic composition, or similar property, held by a taxpayer described in subsection (a) (1) (C). * * *

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *

transfer from Progress to Olympic of the right to purchase 2,250,000 gallons of gasoline per month from General; and that Olympic paid Progress $183,330.50 for the transfer of this right. We do not agree with this argument, because Progress never acquired the right, by assignment or otherwise, to purchase gasoline *from General* under the Progress-Olympic contract. That contract gave Progress the right to have its gasoline requirements supplied by Olympic, and the evidence indicates that its purchases were made from Olympic. The General-Olympic contract was a separate and distinct transaction which gave Olympic the right to purchase gasoline from General, and which provided Olympic with a source of supply which enabled it to enter into contracts to sell gasoline to Progress and others. In the circumstances we cannot agree that the substance of the transaction of July 26, 1950, was a transfer from Progress to Olympic of the right of Progress to purchase 2,250,000 gallons of gasoline per month *from General*.

On July 26, 1950, Progress had the right under the Progress-Olympic contract to purchase 2,250,000 gallons of gasoline per month from Olympic. Because of a shortage in the supply of gasoline at that time, this right had a substantial value. It was property which was susceptible of transfer for a valuable consideration, and such a transfer would constitute a "sale or exchange." It was also susceptible of being canceled or terminated for a valuable consideration, in which event one of the essential elements of a "sale or exchange," a transfer of property, would be lacking.

Progress and Olympic were parties to an agreement entered into on July 26, 1950, which was denominated a mutual termination agreement. After reciting the prior agreements previously entered into by the parties, including the Progress-Olympic contract, this agreement provided in part for the cancellation and termination of the prior agreements, for the release and discharge of Olympic from any duties or obligations arising out of or in connection with the prior agreements, and for the payment of $183,330.50 by Olympic to Progress in "consideration of the termination of said agreements * * * and in consideration of the releases herein provided for * * *."

The petitioners urge that the fact that the July 26, 1950, agreement was denominated a mutual termination agreement and that the words "cancellation" and "termination" were used therein is not necessarily determinative of the nature of the transaction. We agree, and have carefully considered not only the provisions of the agreement but also the attendant facts and circumstances shown by the evidence. They disclose to our satisfaction that the transaction was not intended to effect a sale by Progress of its rights under the Progress-Olympic con-

tract to Olympic; that Olympic was desirous of canceling and terminating those rights; and that the amount of $183,330.50 was paid to Progress in consideration for their cancellation and termination. In return for this payment Progress released Olympic from the obligation to sell it 2,250,000 gallons of gasoline per month. This release not only ended Olympic's duty to supply this gasoline but also destroyed Progress's rights under the Progress-Olympic contract. They were not transferred to Olympic; they "merely came to an end and vanished." Cf. *Commissioner* v. *Starr Brothers, Inc.*, 204 F. 2d 673, 674 (C. A. 2).

We recognize that controversies in this field have resulted in some rather fine distinctions. Thus, the receipt of money in consideration of the relinquishment of contractual rights which had the consequence of enlarging rights in specific property of the other contracting party has been treated as a "sale or exchange." Cf. *Isadore Golonsky*, 16 T. C. 1450, affirmed 200 F. 2d 72 (C. A. 3), certiorari denied 345 U. S. 939; *Louis W. Ray*, 18 T. C. 438, affirmed 210 F. 2d 390 (C. A. 5), certiorari denied 348 U. S. 829; *McCue Bros. & Drummond, Inc.*, 19 T. C. 667, affirmed 210 F. 2d 752 (C. A. 2), certiorari denied 348 U. S. 829; *Henrietta B. Goff*, 20 T. C. 561, affirmed 212 F. 2d 875 (C. A. 3), certiorari denied 348 U. S. 829. Judge A. N. Hand undertook in the *McCue Bros. & Drummond* case to distinguish the two lines of cases; in cases such as *Starr Brothers, supra,* and *General Artists Corp.* v. *Commissioner*, 205 F. 2d 360 (C. A. 2), certiorari denied 346 U. S. 866, there was a mere release of a contractual right which "vanished," whereas in the other line of cases, "the right of possession under a lease or otherwise, is a more substantial property right which does not lose its existence when transferred." 210 F. 2d at p. 753. And we attempted to apply the principles of these cases in *Pittston Co.*, 26 T. C. 967, where the relinquishment of contractual obligations resulted in enlarged rights in the other party to dispose of specific coal produced at its mines. We felt that the facts there presented were comparable to the ones in the *Golonsky* and *Goff* line of cases. In the instant case, however, we cannot find such a transfer of rights in property as was presented in those cases.

If these distinctions are not wholly satisfying, it should be remembered that the Supreme Court was requested to issue writs of certiorari in a number of these cases in order to clarify the situation, but it refused to do so. In the circumstances, we must do the best we can with the precedents at hand, and, applying those precedents here, we conclude that the cancellation of the contract rights herein did not constitute a "sale or exchange."

*Decisions will be entered under Rule 50.*