AIRCRAFT MECHANICS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64704. Filed September 11, 1958.

*Floyd K. Haskell, Esq.,* for the petitioner.
*Thomas Fontecchio, Esq.,* for the respondent.

The Commissioner determined a deficiency of $10,042.77 in the petitioner's income tax for 1952. The only issue for decision is whether the amount of $39,642.49 received by the petitioner in 1952, as a result of the cancellation of the petitioner's indebtedness to Aero Engineering, Inc., is taxable as capital gain or ordinary income.

### FINDINGS OF FACT.

The petitioner, a Colorado corporation, filed its corporate income tax return for 1952 with the director of internal revenue at Denver, Colorado. It used an accrual method of accounting.

The petitioner engineered, designed, and manufactured aircraft components such as motor mounts, ejection seats, and landing gear assemblies. Those products were made to the order of the purchasers, aircraft manufacturers.

Aero Engineering, Inc., an Ohio corporation, was a nonexclusive sales representative of the petitioner for the area east of the Mississippi River during several years prior to June 1951. Aero represented suppliers of the various component parts that go into airplane assemblies. Aero employed engineers, who would attempt to sell to an airplane manufacturer, components made by or which could be made by an organization which Aero represented. Aero also provided liaison between the airplane manufacturer and the supplier of the component through all subsequent stages of production. Aero derived its income from commissions paid by the supplier of the component on sales made through Aero to the airplane manufacturer.

The petitioner owed Aero $39,643.46 for unpaid commissions earned in 1948 and 1949. The petitioner, on an accrual basis, had deducted amounts representing those commissions from ordinary income on its income tax returns for 1948 and 1949. Aero, at the petitioner's request, agreed in March 1951 to subordinate its claim to those unpaid commissions in favor of the First National Bank of Colorado Springs, which then made a loan to the petitioner, and also agreed not to

enforce collection as long as any portion of the loan remained unpaid. The record shows nothing in regard to payments on the loan.

The petitioner, in June 1951, canceled its sales representation agreement with Aero due to dissatisfaction with the arrangement.

The petitioner and Aero entered into a "personal service contract" on December 29, 1952, under which Aero was designated as the exclusive "Engineering and Sales Representative" for the petitioner east of the Mississippi River. Aero could not assign or transfer its rights under the agreement without the petitioner's prior consent.

The agreement set Aero's compensation at a fixed percentage of the amounts paid to the petitioner on any purchase orders received from manufacturers in Aero's sales territory. Aero was to receive in addition commissions, at the established rate, on 43 uncompleted purchase orders previously obtained from manufacturers in Aero's sales territory and in the petitioner's hands as of the effective date of the agreement.

The agreement was entered into "in consideration of the mutual covenants" of the parties. There was no provision requiring either party to pay a monetary consideration for the agreement. Aero had never paid for the right to represent a supplier of aircraft components.

The agreement provided that Aero's sales representation was to be for 1 year, subject to renewal on a year-to-year basis. The agreement could be terminated at any time after the first year by either party giving the other notice of 60 days. The contract was renewed through 1957, with the petitioner agreeing to the substitution of the Garrett Corporation for Aero in 1954 when Aero became a division of Garrett. The contract was modified on December 31, 1957, at the petitioner's request, so that it would not cover any new products marketed by the petitioner after that date.

Aero canceled the petitioner's indebtedness to it in the amount of $39,643.46 in 1952 as part of the consideration for the agreement of December 29, 1952.

The petitioner, on its income tax return for 1952, treated this amount as a long-term capital gain, describing it as "Consideration received in exchange for exclusive franchise to represent Aircraft Mechanics, Inc. in territory [east] of the Mississippi River." The Commissioner, in his notice of deficiency, determined that the amount constituted ordinary income to the petitioner in the taxable year.

All stipulated facts are incorporated herein by this reference.

OPINION.

Murdock, *Judge:* The petitioner deducted the $39,642.49 of unpaid commissions as expenses in the years they accrued and recognizes that

they must be reported as income in 1952 when the obligation to pay them was canceled. The only issue for decision is whether the Commissioner erred in taxing them as ordinary income instead of as long-term capital gain from the sale of a capital asset held for more than 6 months, as reported by the petitioner. The petitioner contends that the $39,642.49 represents the amount realized and the profit, since the basis was zero, from the sale by it to Aero of the exclusive sales representation of the petitioner as provided in the agreement of December 29, 1952. There is no reference in that contract to the past-due commissions or to the cancellation of any indebtedness and the reason for the cancellation is not clear. However, the record requires recognition that the cancellation of the indebtedness of $39,642.49 was, by some oral agreement, a part of the consideration for the agreement of December 29, 1952, and a finding to that effect has been made.

The right to control the sale of its products was inherent in the petitioner. It might use various methods of selling its products such as doing its own selling or contracting with others. It used both of those methods. It entered into a written agreement with Aero on December 29, 1952, whereby Aero was to be the exclusive sales representative for the sale of the petitioner's products in a stated area and Aero separately agreed that it would cancel the indebtedness of $39,642.49 as part of the consideration for the written contract. The written contract, of course, discloses other more important [1] consideration moving from Aero to the petitioner and vice versa.

The petitioner contends that the above-described transaction included the sale of something which had been held by the petitioner for at least 6 months prior to December 29, 1952, as a capital asset within the meaning of section 117 (a) (1) of the Internal Revenue Code of 1939. But was there a sale and was the subject thereof a capital asset of the petitioner within the meaning of the Code? These questions were asked of counsel for the petitioner at the conclusion of the trial but no satisfactory answers or authorities really helpful to the petitioner's case have been furnished to the Court. The petitioner in its brief refers to the transfer of goodwill and to the grant of a franchise, but there is no showing here that the contract of December 29, 1952, conveyed any goodwill of the petitioner to Aero and a franchise is granted by a sovereign authority. Cases involving goodwill and franchises are not in point here.

The agreement was actually a contract for services under which Aero was required to furnish selling, engineering, and, perhaps, other personal services, and the petitioner agreed to pay a commission on

---

[1] The president of Aero stated that Aero "had serious doubts as to the collectibility of the $39,643.46."

sales and that Aero would be its only sales representative in the area. The exclusive sales representation was a naked contract right. The petitioner by that agreement sold nothing. The petitioner's inherent right to control its sales was not shown as an asset on its books or financial statements. The contract effected no reduction or change in the assets shown on its books or balance statements. The petitioner created the exclusive sales territory for the purpose of the agreement and did not previously hold it as a capital asset within the meaning of section 117 (a) (1). It does not appear that this was the kind of a transaction which Congress had in mind for the application of the long-term capital gain provisions of section 117. No such relief was needed to stimulate agreements like this one.

The contract for the exclusive sales representation might be a capital asset in the hands of Aero which acquired that right. Cf. *Elliott B. Smoak*, 43 B. T. A. 907; *Jones* v. *Corbyn*, 186 F. 2d 450. However, the cancellation or surrender of a somewhat similar right by a taxpayer in the position of Aero in this case has been held not to be a sale or exchange. *Commissioner* v. *Pittston Co.*, 252 F. 2d 344, reversing 26 T. C. 967; *General Artists Corporation* v. *Commissioner*, 205 F. 2d 360, affirming 17 T. C. 1517, certiorari denied 346 U. S. 866; *Commissioner* v. *Starr Brothers, Inc.*, 204 F. 2d 673, reversing 18 T. C. 149.

The petitioner has failed to prove error in the determination of the Commissioner.

*Decision will be entered for the respondent.*