Meyer J. STAVISKY and Theresa Z. Stavisky, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 307, Docket 26473.

United States Court of Appeals Second Circuit.

Argued April 12, 1961.

Decided June 5, 1961.

Asher Lans and Stanley N. Queler, New York City, for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Fred Youngman, Washington, D. C., for respondent.

Before HAND, MEDINA and FRIENDLY, Circuit Judges.

HAND, Circuit Judge.

This case comes up on a petition by taxpayers, husband and wife (whom we shall call Stavisky), to review an order of the Tax Court allowing a payment to Sutro only as a long-term capital loss, deductible subject to the limitations of § 117(d) (2) of the Internal Revenue Code, and not as an "ordinary loss" deductible under § 23(e), 26 U.S.C.A. §§ 23(e) 117(d) (2). The facts are as follows.

On September 19, 1950, Stavisky contracted with Ira Haupt & Co. to deliver 10,000 shares of an unissued preferred railway stock, "when, as and if issued" at $58¼ a share. On the next day he contracted to buy 10,000 shares of the same stock from Haupt & Co. at $58⅜ per share. The rules of the New York Stock Exchange, which both parties accepted as applicable to their contracts, provided that, when a contract is to sell shares, "when, as and if issued," and the quotation for the shares rises, the seller may be compelled to deposit security for his performance. Similarly, if the contract is to buy "when, as and if" shares and the quotation falls the buyer may be obliged to secure his contract to buy. By December, 1951, Stavisky became concerned over his contract to sell the shares because their value, as quoted, had risen considerably. He therefore sought an interview with a representative of Haupt & Co. and together they consulted with one, Jacobson, a representative of a corporation, known as Sutro Brothers. Jacobson suggested that Stavisky should "assign" to Sutro 40 percent of his contract with Haupt, in exchange for $31,-150 and Sutro's promise to hold Stavisky harmless from any liability to Haupt. This suggestion Stavisky accepted, paid Sutro the money and "assigned" to him 40 percent of the shares, when issued. Before any time had been fixed for the issue of the shares, the proposed increase was cancelled, and neither Sutro nor Stavisky was called upon to tender any shares to Haupt.

The Tax Court held that the "transaction of December 1951 was in form and

substance a transfer to Sutro of petitioner's" (Stavisky's) "rights and liabilities under the contract, not a mere cancellation or release from liability." We understand this to mean that Sutro's promise was more than an agreement with Stavisky to hold him harmless for his liability to Haupt, and included a release of Stavisky by Haupt. In short, it means that there was a novation out of which emerged only a contract by Sutro to tender the shares at the old price and a change of the seller, as obligor, from Stavisky to Sutro.

So understood, the position of Stavisky is that the payment to Sutro of $31,150 was an "ordinary loss" which he was entitled to deduct. The Commissioner's position is that it was a "capital loss" and fell within § 23(g) (1). The issue is whether we should assimilate the situation to that in Bingham v. Commissioner of Internal Revenue, 2 Cir., 105 F.2d 971; Commissioner of Internal Revenue v. Starr Bros., 2 Cir., 204 F.2d 673; Commissioner of Internal Revenue v. McCue Bros. & Drummond, Inc., 2 Cir., 210 F.2d 752; and Commissioner of Internal Revenue v. Pittston Co., 2 Cir., 252 F.2d 344, 348. The Commissioner argues that the transaction was allowable as a deduction only under § 117(d) (2). It must indeed be admitted that the controlling law is not altogether clear, as we have recognized before. In a situation closely akin to that at bar (Commissioner of Internal Revenue v. Pittston Co., supra, 348), we said: "Even though the logic of setting the limit by drawing the line where it now is may be open to debate, any line set must be to some degree arbitrary. This case falls outside the limit thus far set for the exception by this court. We should leave further expansion of the exception, to include the release of naked contract rights as a 'sale,' to legislative action."

In the case at bar the performance of the original contract—that is, the purchase of the shares—at the price fixed—remained what it had been. Sutro became bound to precisely what Stavisky had promised; the only difference was that he was substituted for Stavisky. That was not true in any of the precedents on which Stavisky relies. That he paid Sutro the money to induce him to become the seller did not affect the nature of his obligation. True, Stavisky having been released, Stavisky's contract, when assigned to Sutro, became a nullity, and the practical effect was to extinguish it, so far as he was concerned; but that did not incorporate the payment into the original contract, or make it a payment of any promise in the contract. The contract remained an exchange of "capital assets," as it had been originally and for that reason it fell within § 117(a) (5) and the payment could not be counted in computing Stavisky's income.

Order affirmed.