**BILLY ROSE'S DIAMOND HORSESHOE, INC. (In Dissolution), Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 917, Docket 71–1172.

United States Court of Appeals, Second Circuit.

Argued June 22, 1971.

Decided Sept. 3, 1971.

James R. Cherry, New York City (Hays, St. John, Abramson & Heilbron, New York City, on the brief), for appellant.

Michael I. Saltzman, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, Alan B. Morrison, Asst. U. S. Atty., on the brief), for appellee.

Before SMITH and HAYS, Circuit Judges, and POLLACK,* District Judge.

HAYS, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York holding that taxpayer appellant is not entitled to use the installment method of § 453(a) (1), (b) (1) of the Internal Revenue Code of 1954 in reporting certain payments received from a lessee for a release from an obligation to restore the leased premises. We affirm the judgment of the district court, 322 F. Supp. 76.

The facts are undisputed. In 1955 the taxpayer leased the Ziegfeld Theatre building, its furniture and equipment to the National Broadcasting Company, Inc. NBC in its lease covenanted that upon expiration of the lease it would "leave, surrender and yield up the demised premises, including all furniture, fixtures and equipment * * * in approximately the same condition as received. * *" Once NBC took possession of the theatre, it removed the stage, the lower lounge, many walls, two floors back stage, existing air-conditioning equipment, and all the orchestra seats. In their place, an appropriate structure and equipment for color television operations was installed. Prior to the expiration of the lease in 1962, the parties entered into several instruments dated June 28, 1962 which fixed $300,000 as the value of what had been taken out and not restored and as "full satisfaction and compromise of [lessee's] obligation to restore the Ziegfeld Theatre to approximately the same condition as the same was in when received by [lessee] as required by * * * [the] lease." As part of this agreement, the lessee signed three promissory notes, payable as follows: $100,000 on September 4, 1962, $50,000 on January 2, 1963, and $150,000 on September 1, 1963. No part of the proceeds of the notes delivered to the appellant was actually used to restore the Ziegfeld Theatre to its condition at the beginning of the lease term.

In its income tax return for the fiscal year ended August 31, 1962, appellant elected to report the payments received for release of the right to restoration on the installment basis. Since the first promissory note was not payable until September 4, 1962, no part of the $300,-000 was included as income in this period and the return showed a net operating loss of $111,452.50. This loss was carried back to the fiscal year ending August 31, 1959 since there were net operating losses in the intervening years.

* Of the United States District Court for the Southern District of New York, sitting by designation.

The Commissioner determined that the entire $300,000 face amount of the notes was reportable in the fiscal year ending August 31, 1962 as ordinary income, thereby eliminating the claimed net operating loss carryback for the fiscal year 1959. Plaintiff's claim for refund of $24,913.78 for its fiscal year 1959 was therefore rejected. Plaintiff brought this action in the district court to obtain the refund.

The sole issue presented is whether taxpayer may elect to use the special relief provisions of § 453 of the Internal Revenue Code of 1954 and thus postpone tax on the three notes until they are paid or whether the notes are income in the year received in accordance with the general rules of taxation. Int.Rev.Code of 1954, § 61(a)(3). Section 453 provides in relevant part:

(a) Dealers in Personal Property.—

(1) In General.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.
\* \* \*

(b) Sales of Realty and Casual Sales of Personalty.—

(1) General Rule—Income from—

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $1000,

may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection (a).

The transaction involved here was not a "sale or other disposition of personal property" as those terms are used in Section 453. This court has long held that cancellation or release of a contract right does not transfer the rights to the transferee-payor and thus is not a "sale." Pittston Co. v. Commissioner of Internal Revenue, 252 F.2d 344 (2d Cir.), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958) (cancellation of exclusive right to purchase coal output); General Artists Corp. v. Commissioner of Internal Revenue, 205 F.2d 360 (2d Cir.), cert. denied, 346 U.S. 866, 74 S.Ct. 105, 98 L.Ed. 376 (1953) (release of singer under exclusive booking agency); and Commissioner of Internal Revenue v. Starr Bros., Inc., 204 F.2d 673 (2d Cir. 1953) (cancellation of distributorship agreement). As this court stated in Starr Bros., 204 F.2d at 674:

"What the taxpayer gave in return for the cash payment was a release of United's contract obligations, chief of which was its promise not to sell its products to other dealers in New London. Such release not only ended the promisor's previously existing duty but also destroyed the promisee's rights. They were not transferred to the promisor; they merely came to an end and vanished."

Similarly in this case, the release not only ended the lessee's duty under the lease restoration clause but also destroyed appellant's rights to have the property restored. These contract rights came to an end and vanished. The lessee purchased no property but merely extinguished its liabilities under the restoration clause.

Appellant argues strongly that the General Artists-Starr Bros. line of cases no longer has any validity in light of the enactment of Int.Rev.Code of 1954, § 1241 and the decision of this court in Commissioner of Internal Revenue v. Ferrer, 304 F.2d 125 (2d Cir. 1962). Although § 1241 does provide that cancellation of a lease (by the lessee) or of a distribution agreement is now to be con-

sidered a sale, the legislative history makes clear that revision was intended to be limited to those two types of transactions. The Senate Report specifically states:

> "The section is limited in scope and it does not constitute a re-examination of present law relating to contracts to which the section does not specifically apply." S.Rep.1622, 83rd Cong., 2d Sess., at 115 (1954).

As far as the statute is concerned, the cancellation of a contract right other than the cancellation of a lease or a dis·tributorship agreement continues to be governed by the law as it existed before the enactment of § 1241.

We do not agree that *Ferrer* overruled the *General Artists* and *Starr Bros.* cases. *Ferrer* is to be distinguished on the ground that it involved the release of motion picture production rights which could have been sold to any third person.[1] A release of a right to restoration is entirely different and is not a "sale" under § 453(b) (1) (B).

Affirmed.

Hays, Circuit Judge, filed concurring opinion.

1. The comment of Judge Friendly in *Ferrer, supra* at 131, that § 1241 indicates a Congressional disenchantment with the *Starr* line of cases must be confined to the sale-of-leaseholds and distribution-rights areas.