MERRILL J. FOOTE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9667–81.     Filed December 7, 1983.

Merrill J. Foote, pro se.
*Gary A. Benford,* for the respondent.

DRENNEN, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes for the years 1977 and 1978 in the amounts of $2,715 and $4,074, respectively. The primary issue is whether money paid to petitioner pursuant to his

---

resignation of his tenured faculty position at Southern Methodist University is taxable as ordinary income or as long-term capital gain. Petitioner also argues that the Court erred in sustaining respondent's objection to a question posed to a witness at trial.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

Petitioner Merrill J. Foote timely filed joint Federal income tax returns with his spouse for the years 1977 and 1978.[1] At the time of the filing of his petition and throughout the period discussed herein, petitioner was a resident of Dallas, Tex.

In 1968, petitioner accepted a position as an associate professor of management science at the Southern Methodist University School of Business Administration (university). In 1971 he was promoted to the rank of assistant professor.[2]

In 1972, the university officially recognized petitioner's tenure. Normally, a professor is accorded the status of tenure only by a process of review after the individual has taught for a period of 6 years. Petitioner, however, received tenure by the less common procedure called de facto tenure, whereby a faculty member is deemed to have received tenure if he has taught for more than 6 years without the university's taking the necessary administrative steps to review his performance. Petitioner's de facto tenure arose unintentionally and without the knowledge of the university, due to the fact that under guidelines followed by the university, petitioner's prior teaching experience at another university counted towards his tenure at SMU.

Contrary to general understanding, tenure is not "granted" by the university. Rather, it is a status that arises as a result of a faculty member's service to the university; it is then recognized by the university. Tenure is essentially an assur-

---

[1] Petitioner's spouse, Janet V. Foote, did not file a petition in this Court nor did she join in the petition filed by petitioner.

[2] It is so stipulated. However, the stipulated exhibits indicate that petitioner was employed in 1968 as an assistant professor and was promoted in 1971 to associate professor.

ance of lifetime employment with the university. A tenured professor at SMU can be dismissed only on the grounds of moral turpitude or gross incompetence. Tenure generally allows a professor more freedom to engage in scholarly activities such as research and writing, as well as activities outside of the university, such as consulting and other professional work, than would a nontenured professor be permitted.[3] Tenure cannot be purchased, and a tenured faculty member cannot sell his tenure to another person.

While tenure may be viewed as an informal employment contract with the university, it does not guarantee any specific salary. Petitioner entered into annual employment contracts with the university that specified his salary.

During his employment with the university, petitioner taught courses and engaged in other academic activities in a normal manner. However, during 1975 and 1976, some students and faculty members expressed concerns about his work, and friction apparently developed between petitioner and the administration. Petitioner was inclined to devote more time to his outside business activities than to his teaching and other university responsibilities. He described himself as "not a team player."

In January 1977, petitioner and the university entered into an agreement whereby petitioner resigned his tenured appointment in exchange for a sum of $45,640, to be paid him by the university in monthly installments throughout 1977 and 1978.[4] Under the agreement, petitioner had no further obligations to the university, and he ceased teaching at that time.

During 1977 and 1978, petitioner realized net losses from consulting of $4,435 and $1,700, respectively.

Pursuant to the agreement, petitioner received monthly payments of $1,901.67 from the university. Petitioner reported

---

[3] A tenured faculty member is required to teach only 9 hours per week.

[4] This agreement provided, in addition to the payments, that the university would provide petitioner with an office through 1979, allow him to use the title "Adjunct Associate Professor" during that period, seal a report on petitioner which was prepared by a university committee, and require no services or other activities from petitioner beginning Jan. 1, 1977. Petitioner agreed to resign his tenured appointment as a faculty member and "acknowledge that this agreement represents an entire settlement of any claim which Dr. Foote has or might have * * * under his employment agreement."

these payments as long-term capital gain on his income tax returns for those years.

Respondent issued a joint notice of deficiency to petitioner and his spouse, Janet, in which he determined that the payments received by petitioner from the university were ordinary income.

## OPINION

The primary issue is whether petitioner is allowed to treat the payments received from the university pursuant to his resignation of his tenured appointment as assistant or associate professor as long-term capital gain, rather than ordinary income. Petitioner contends that his tenure was a capital asset, which he "sold" to the university. Respondent contends that the transaction cannot be viewed as the sale or exchange of a capital asset within the meaning of sections 1221 and 1222,[5] but rather represents a termination of petitioner's rights under an employment agreement, the payment for which is ordinary income.

Petitioner cites no authority supporting his position,[6] but presents us with a comprehensive discussion of why tenure, from the viewpoint of economics, constitutes an intangible capital asset. His argument, briefly stated, is that tenure affords a faculty member the freedom and opportunity to use the benefits of his university affiliation to generate income from activities such as consulting, speaking, and writing. The university affiliation provides resources such as contacts, prestige, visibility, and marketing channels for business activities. Because tenure assures job security, the faculty member is free to devote most of his time and energy to such personal business pursuits, contrary to the wishes of the university. Petitioner asserts that the aggressive exploitation of the business potential of tenure can produce income and capital appreciation far in excess of a teaching salary. Furthermore, he argues, as tenure is exploited in this fashion, its value

---

[5]All section references are to the Internal Revenue Code of 1954 as amended and in effect for the years in issue.

[6]Petitioner admitted at trial that "I don't know the law * * * but I know economics."

increases, as does the university's incentive to disassociate itself from a tenured professor by "purchasing" his tenure.[7]

Thus, according to petitioner's economic thesis, the agreement in question constitutes a sale of an intangible capital asset, his tenure, the consideration for which primarily reflects the capital asset value of the tenure, rather than the value of the right to receive future salary, and hence is properly taxable as capital gain.

While we find petitioner's argument to be ingenious and well presented, we are not so free to approach the question unencumbered by statute and case law. In order to entitle himself to preferential capital gain treatment, petitioner must demonstrate that the gain was produced by the (1) "sale or exchange" of (2) a "capital asset." Secs. 1221 and 1222. We think it is clear, from the extensive case law interpreting the capital gains provisions, that petitioner does not satisfy either of these requirements, and we therefore must find for the respondent.

"Capital asset" is defined in section 1221. Generally, it is property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade or property held primarily for sale to customers in the ordinary course of his trade or business, or depreciable property used in his trade, or certain other specified types of property.

It is well established that a taxpayer does not bring himself within the capital gains provisions merely by showing that a contract constitutes "property," that he held a contract, and that his contract does not fall within a specified exclusion of section 1221. *Commissioner v. Gillette Motor Transport, Inc.*, 364 U.S. 130, 134 (1960); *Bisbee-Baldwin Corp. v. Tomlinson*, 320 F.2d 929, 932 (5th Cir. 1963); *Commissioner v. Ferrer*, 304 F.2d 125, 129 (2d Cir. 1962); *Buena Vista Farms, Inc. v. Commissioner*, 68 T.C. 405, 411 (1977). Generally, the consider-

---

[7]Petitioner explains that the motivation for the university to "purchase" tenure arises from a conflict of interests: the faculty member desires to exploit the value of his tenure in his business while fulfilling his minimal teaching obligations, while the university desires that he devote more time to university activities. He describes the university as the only "full function buyer" of the tenure; it can realize the full benefit of "ownership" of the tenure by reassigning it to someone more amenable to its policies. Petitioner contends that the "repurchase value" to the university of the tenure reflects the tenure's value as a capital asset.

ation received for the transfer or termination of a contract right to receive income for the performance of personal services is taxable as ordinary income. *Bisbee-Baldwin Corp. v. Tomlinson, supra; United States v. Woolsey,* 326 F.2d 287, 291 (5th Cir. 1963); *United States v. Eidson,* 310 F.2d 111, 114–115 (5th Cir. 1962); *Kingsbury v. Commissioner,* 65 T.C. 1068, 1081 (1976); *Flower v. Commissioner,* 61 T.C. 140, 148 (1973).

The central theme of the many cases denying capital gains treatment on the termination of such contract rights is that the payment received is essentially a substitute for ordinary income which would have been earned in the future. See *Kingsbury v. Commissioner, supra* at 1082–1083, and *Commissioner v. P. G. Lake, Inc.,* 356 U.S. 260, 266 (1958). Despite petitioner's effort to imbue his tenure with the attributes of a capital asset, we think his rights were not substantially different than the rights under any long-term employment or agency agreement.[8]

It is clear from petitioner's own testimony that petitioner's tenure put him in a position to earn additional income. Not only could he continue to earn his salary with a minimum amount of teaching, but he was put in a position to earn fees from consulting, writing, research, and other activities performed for additional monetary considerations. All of such income would have been taxable as ordinary income. What petitioner gave up through the resignation of his tenured position was the opportunity to receive future ordinary income. What he received was not paid for any increase in the value of his tenure over a long period of time, which is the basis for the favored tax treatment given capital gains. *Commissioner v. P. G. Lake, Inc., supra.* As one court stated: "The nature of the right to receive future income as ordinary income does not change into capital gain by the mere receipt of a lump sum in lieu of such future payments." *Holt v. Commissioner,* 303 F.2d 687, 691 (9th Cir. 1962), affg. 35 T.C. 588 (1961). We conclude that petitioner's tenure did not qualify as a capital asset.

---

[8]See *Gordon v. Commissioner,* 262 F.2d 413 (5th Cir. 1958).

In response to petitioner's argument that tenure allows the faculty member to generate income from his university affiliation, respondent aptly observes that this does not distinguish the tenured professor from the myriad other persons who are able to capitalize on their employment status, e.g., a professional athlete endorsing products.

Even were we to accept the proposition that tenure has significant value independent of its assurance of future salary,[9] petitioner has not executed a "sale or exchange" for the purposes of the capital gains provisions. The agreement in question simply terminated petitioner's rights; his tenure did not pass to the university, but was extinguished. Tenure is a personal right. It cannot be transferred to, or utilized by, another. As explained by Professor John Stieber in his testimony (transcript at 34), tenure is not granted by the university, it is recognized by the university. Under these circumstances, there is no "sale or exchange." *Billy Rose's Diamond Horseshoe, Inc. v. United States*, 448 F.2d 549 (2d Cir. 1971); *Commissioner v. Pittston Co.*, 252 F.2d 344 (2d Cir. 1958), revg. 26 T.C. 967, cert. denied 357 U.S. 919 (1958); *Commissioner v. Starr Bros., Inc.*, 204 F.2d 673, 674 (2d Cir. 1953), revg. 18 T.C. 149; *Leh v. Commissioner*, 27 T.C. 892 (1957), affd. 260 F.2d 489 (9th Cir. 1958); *Luna v. Commissioner*, 42 T.C. 1067, 1079 (1964). While there has been some uncertainty among the courts as to whether the release of various rights and obligations constituted a sale or exchange, as witness the preceding and other cases, we think it is clear in this case that there was no sale or exchange. The agreement simply terminated petitioner's tenure and released the university of its obligations. Petitioner's tenure rights "were not transferred to the promisor; they merely came to an end and vanished." *Commissioner v. Starr Bros., Inc., supra* at 674. Compare *Commissioner v. Ferrer, supra,* which involved the release of motion picture production rights that could have been sold to any third person, and in which the release of the rights was found to be a sale or exchange. We hold for respondent that petitioner must report the payments as ordinary income.

Petitioner also asserts that the Court erroneously sustained respondent's objection to a question posed to a witness at trial. Respondent called Dr. Allen B. Coleman, who was the Dean of the Edwin L. Cox School of Business at the time of petitioner's resignation. During cross-examination, petitioner asked Dr.

---

[9]We note that, while there may be some plausibility to petitioner's capital asset theory, there is no evidence that he, himself, "aggressively exploited" his tenure to produce income. In fact, during 1977 and 1978, while still entitled to use the resources of the university, he incurred net losses in his consulting.

Coleman: "In your opinion, is tenure a capital asset?" The Court sustained respondent's objection that this question asked for a legal opinion. However, Dr. Coleman was permitted to testify as to the economic definition of a capital asset, and another witness, Professor John Stieber, was permitted to testify as to whether tenure is a capital asset from the viewpoint of economics.

It is a basic rule of evidence that a witness may not testify as to his opinion on a question of law. 2 S. Gard, Jones on Evidence, sec. 14:33 (6th ed. 1972). We believe we were correct in sustaining respondent's objection. Furthermore, it is clear that petitioner was not restricted from questioning Dr. Coleman and Professor Stieber regarding the economic definition of a capital asset and the nature of tenure.

*Decision will be entered for the respondent.*