*451 OPINION.
Turnee :
The first question to be considered is whether the portion of the net proceeds received by petitioner from the sale of the property represented consideration received from the sale of his lease, as petitioner contends, or was payment to him for the cancellation of his lease, as respondent contends.
In support of his contention the respondent points to the agreement between the petitioner and the son respecting the division of the net proceeds and containing the provision that the petitioner agreed “to cause his lease to be canceled and released of record as a part of the closing of the transaction”, and urges that under the decision in Hort v. Helvering, 318 U. S. 28, the amount received by petitioner was essentially a substitute for the rental payments which the petitioner might receive throughout the unexpired period of his lease. From the testimony of Bobert F. Bingham, the attorney who drew not only the lease for the petitioner but also the agreement containing the above quoted provision, it appears that said provision was intended to be merely procedural and for the purpose of providing for the petitioner’s disposition of his interest in the property, and that it was not inserted to show that the parties were intending to follow the particular method which cancellation would imply. The sale of the property was consummated by two deeds which were prepared by the purchaser or his representative. The petitioner’s conveyance of his interest in the property was by quitclaim deed which indicated the petitioner’s intention to convey all his rights and interest in the property including all his rights under his lease. Aside from the quitclaim deed, petitioner executed no other form of' conveyance of his lease nor of his interest arising therefrom. Neither was there any instrument of cancellation executed by the petitioner and the son nor was any endorsement of cancellation entered on the lease instrument. In addition, the warranty deed from the son to Avis specifically provided that the latter accepted the premises subject to the occupancy thereof by A & P under a lease. This indicates an intent to preserve as between Avis and A & P the latter’s rights and liabilities with respect to the property arising from its lease, which was obtained from the petitioner, who in turn held his lease from the son.
From the evidence before us we are unable to find that the petitioner canceled his lease or that the amount received by him from the sale of the property was anything other than consideration received by him through the sale of his leasehold interest. We are also unable to see wherein the decision in Hort v. Helvering, supra, is applicable *452 to the instant case. In the Hort case the taxpayer was the owner of certain real estate which he had acquired by devise from his father in 1928. Prior to his death the father executed a lease on a portion of the property to a trust company for a period of 15 years beginning on February 1,1932, at an annual rental of $25,000.' In 1933 the trust company found it unprofitable to continue the occupancy of the property. After some negotiations the taxpayer in December 1933 canceled the lease in consideration of the payment to him of $140,000 by the trust company. In his income tax return for 1933 the taxpayer claimed a loss deduction on the transaction of $21,494.75 on the theory that the amount he received for cancellation was $21,494.75 less than the difference between the present value of the unmatured rental payments and the fair rental value of the portion of the property covered by the lease. The respondent disallowed the loss deduction claimed and included the $140,000 in income. The Court held that the taxpayer was not entitled to deduct the claimed loss because to allow it would result in the reduction of ordinary income actually received and reported by the amount of income that the taxpayer had failed to realize, a result which was not permissible under the act. It was also held that the $140,000 received was essentially a substitute for the unmatured rental payments under the lease and as such constituted ordinary income and not capital gain.
Obviously the factual situation in the instant case is materially different from that in the Hort case. That case was grounded on the uncontroverted and apparently conceded fact that the taxpayer had canceled a lease on real estate which he owned in fee. Here the petitioner was not the owner of the fee nor was the amount in controversy received by him from his lessee. After the sale of his lease he no longer owned any interest in the property. To apply to the instant case the rule of the Hort decision would be the equivalent of holding that when the owner of an interest in a rental property disposes of such interest the consideration received therefor in excess of the cost basis is essentially the equivalent of anticipated rentals therefrom. We find nothing in the Hort decision to indicate that the Court intended that it should be given such a construction.
Under his lease from the son the petitioner was required to pay a rental of $25 a year for the property. Concededly such a rental was nominal and obviously was not intended to and did not approximate the annual rental value of the property. Under the circumstances we think the lease is to be considered as a gift from the son to the petitioner. Since the lease appears to have been of considerable value, it is our opinion that for the purpose of computing the gain to the petitioner from its disposition he is entitled to the use of a basis. Secs. Ill (a) and 113 (a) (2) of the Revenue Act of 1936. At the hearing the parties stipulated that in event we should hold that the petitioner *453 is entitled to a basis in computing Ms gain from tlie transaction the amount of such basis is $7,909.90. Accordingly we hold that amount to be the basis to which the petitioner is entitled.
The lease was an asset in the hands of the petitioner and we think comes within the definition of capital assets as contained in section 117 of the applicable act. .Therefore the gain realized by the petitioner from the sale of the lease was capital gain within the meaning of that section of the act. But compare Jofm D. Fadder, 45 B. T. A. 708, arising under section 117 of the Revenue Act of 1938, which contained a different definition of capital assets from that contained in the act applicable herein. In his petition the petitioner alleged that only 30 percent of the gain realized from the sale was to be taken into account in computing net income. However, on brief he concedes that he held the lease for more than five years but less than ten years. In view of this and in accordance with the provisions of section 117, supra, 40 percent of the gain is to be taken into account in computing his net income.

Decision will be entered under Rule 50.