41 C.C.P.A. (Patents)

## Application of GIBBONS.
### Patent Appeal No. 6005.

United States Court of Customs and Patent Appeals

Feb. 3, 1954.

Conder C. Henry, Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office sustaining the action of the Primary Examiner in rejecting claims 1, 3, and 5 in appellant's application for a patent on an alleged improvement in the method of balancing photographic light. No claims were allowed.

Claim 5 is illustrative and sufficiently descriptive of the involved subject matter. It reads as follows:

"5. The method of equally exposing a photographic emulsion of any type to an action scene, one portion of which is outdoors and illuminated with one light intensity, and another portion of which is indoors and illuminated with a lower light intensity, comprising determining the intensity of illumination of said indoor portion of said scene dependent upon the type of said photographic emulsion, illuminating said portion at said intensity, and inserting a separate filter screen in said outdoor portion adjacent said indoor portion to reduce the light intensity of said outdoor portion as impressed on said emulsion in accordance with the difference between the illuminations of said portions, said filter screen reducing light over all wave lengths of the visible spectrum in substantially equal amounts."

The tribunals of the Patent Office rejected the claims as unpatentable over the disclosure, "Blue Windows," a magazine article by Russell Metty, published in the November edition, 1941, of American Cinematographer, a trade journal in which those engaged in the motion picture industry discuss their problems and findings.

The instant application is a division of appellant's co-pending application No. 40,666, filed July 26, 1948, claiming the light filter screen, per se. Such a screen, basic to the method defined by the appealed claims, is one in which dye is applied and absorbed by the screen. It "is made of multiple coats of plastic material, is light, tough, and, when mounted in its frame, may be easily moved about to the desired location."

The author Metty in his disclosure discussed in graphic terms the "headache"[1] imposed upon him by the director of production, Stevenson, in shooting the picture "Joan of Paris." The same problem for some time has likewise confronted appellant, representing Warner Brothers Pictures, Inc., and other artisans employed under similar circumstances in the industry.

"This reference," the board remarked, "discloses the use of a colored filter material sprayed upon the surface of a window whereby the intensity of the outside light is reduced to be commensurate with that of the interior illumination. The article discloses the use of a light blue filter and mentions that a little red might be needed. This article also recognizes that the filter should be readily removable in order to permit shots from the outside in as well as from the inside out. We agree with the Examiner that this article discloses all of the method steps recited in the claims except that appellant employs a different color filter. * * * It may also be noted that the claims recite the filter as a separate removable filter. We do not consider this to distinguish patentably over the Metty process * * *."

The question is whether appellant's method of solving the problem constitutes an improvement patentably distinct from the technique of spraying the window with a colored filter as applied by Metty and described in his article. The acknowledged distinction between the disclosures of Metty and the appellant amounted in the judgment of the Patent Office to no inventive feature.

The use of a colored and neutral density filter is well known in photography, it was there held, and the use by appellant of any particular filter to be used in Metty's process amounts not to invention but merely to a choice which may be readily exercised by any worker skilled in the art. Such a person, it was further held by the tribunals of the Patent Office, could readily employ a filter screen separate from the window filter, as appellant does, "since quite obviously the lacquer filter described therein [by Metty] is readily removable."

A distinction between the two disclosures here involved gives an advantage to appellant's method, which is not confined to making the problem shots through the "Blue Windows" of the

---

1. This quoted excerpt from Metty's "Blue Windows" is described by appellant as "a perfect example" of the involved problem:

"When I was handed a copy of the script, I found a scene that called for a set-up in the lobby of a hotel, showing Michele Morgan talking to a Gestapo agent. As she turns and looks through the window she sees her lover, Paul Henried, crossing the sunlit square.

"Wondering if I had mis-read it, I read the scene a second time. No, I hadn't mis-read it. There it was and it read with the same understanding. There must be a mistake, I thought. I barged into Mr. Stevenson's office to call his attention to it and ask him if that was the way he intended it to be.

" 'You've guessed it right,' he answered.

" 'But,' I said, 'that's shooting from inside out, and there's no magenta gelatin sheets big enough to cover those windows without showing patches.'

" 'Sorry,' said Director Stevenson, 'but that's the scene I want, just like it reads. Sharp outside, sharp inside. It's your headache.' "

room described by Metty, but also includes the making of similar shots through an open door or doors. The following succinct excerpt from appellant's brief is deemed to involve noteworthy features patentably distinct from Metty's disclosure:

"Gibbons' claim distinguishes from Metty in two respects, each, we submit, resulting in a better and cheaper method of making pictures. First, the claim calls for 'a separate filter screen in said outdoor portion adjacent **said** indoor portion.' Metty's screen **is** part of the set. The Board, however, takes the view that Metty's emulsion can be removed and, therefore, is separate. But the emulsion is only a part of his screen. It would be necessary to remove the window to constitute Metty's screen as being separate. And if the shot was through a doorway, it would be necessary to first build in the screen before it could be removed. Second, Gibbons' screen equalizes the light intensities in all wavelengths of the visible spectrum, thus making it adaptable for all types of emulsions, and permits reverse shots of the low intensity illuminated area to be made immediately after the screen is removed with the same film at the same exposure and with the same definition. Metty has no such filter."

The Solicitor for the Patent Office suggests that the result sought and attained by Metty is the same as that developed by appellant. The latter does not contend, however, that he "accomplishes any ultimate object different from Metty, any more than we would contend that an hour-glass, a sun-dial, a grandfather clock, a spring wound clock, and an electric clock would not all measure time."

■ The criterion for determining the question of patentability in cases such as we have here has been frequently stated. To quote, for example, from the court's decision in O'Rourke En-

gineering Const. Co. v. McMullen, 2 Cir., 160 F. 933, 938:

"The principal question in such cases is: Has the patentee added anything of value to the sum of human knowledge, has he made the world's work easier, cheaper and safer, would the return to the prior art be a retrogression? When the court has answered this question, or these questions, in the affirmative, the effort should be to give the inventor the just reward of the contribution he has made."

The same rule was restated recently by the Supreme Court. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162. In considering the question of invention, it is necessary to determine further whether the art relied upon contains adequate directions for the practice of the invention without resort to the involved application. Railroad Supply Co. v. Hart Steel Co., 7 Cir., 222 F. 261, 273; Lorenz v. Colgate-Palmolive-Peet Co., D.C., 60 F.Supp. 824.

■ Appellant emphasizes that his invention resides not merely in making a portable filter screen, but in making a filter screen adaptable for a new and inventive use, citing McClave-Brooks Co. v. M. H. Treadwell Co., 3 Cir., 220 F. 144, 146. Other desirable features defined by the appealed claims, but not disclosed by Metty, are presented in appellant's brief. It is deemed unnecessary to discuss them, however, since we believe invention was required and is present in appellant's concept and reduction to practice as defined by his application. The decision of the Board of Appeals is accordingly reversed.

Reversed.

JACKSON, J., retired, was recalled to participate in this case in place of COLE, J.

WORLEY, J., concurs in the conclusion.