**METROPOLITAN BUILDING COM-PANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

No. 16609.

United States Court of Appeals Ninth Circuit.

Sept. 2, 1960.

James W. Johnston, Seattle, Wash., for petitioner on review.

Graham, Green & Dunn, Seattle, Wash., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Carter Bledsoe, Attys., Dept of Justice, Washington, D. C., for respondent.

Before HAMLIN and MERRILL, Circuit Judges, and WOLLENBERG, District Judge.

MERRILL, Circuit Judge.

The question presented by this case involves the owner of real property, his lessee and a sublessee. The sublessee wished to enter into a desirable arrangement directly with the owner and to this end to eliminate the intervening interest of the lessee-sublessor. He paid a sum of money to the lessee, in consideration of which the lessee released to the owner, his lessor, all his right and interest under his lease.

The question presented is whether the sum so paid to the lessee is to be regarded entirely as the equivalent of rent owed to the lessee and taxable to the lessee as income or whether it is to be regarded entirely as a sale by the lessee of a capital asset and taxable as capital gain. The Commissioner of Internal Revenue ruled that the payment was the equivalent of rental and taxable as income.

At issue is the amount of tax from Metropolitan Building Company, the lessee, for the taxable year ending June 30, 1953. Following the ruling of the Commissioner, this proceeding was instituted in the Tax Court by Metropolitan for redetermination of deficiencies in income and excess profits taxes for that year. The Tax Court affirmed the ruling of the Commissioner. Metropolitan has petitioned this Court for review, contending that the payment in question should be held to be capital gain. We have concluded that petitioner is correct in its contention and that the judgment of the Tax Court must be reversed.

The University of Washington owns real estate comprising about four city blocks in the downtown area of Seattle. In 1907 it executed a lease upon this property extending to November 1, 1954. This lease was acquired by petitioner Metropolitan Building Company on December 3, 1907.

On August 1, 1922, Metropolitan executed a sublease of the greater portion of one city block, extending to October 31, 1954, one day prior to the termination of the main lease. Under the terms of the sublease the sublessee was to con-

struct a hotel upon the leased premises. Rental provided was $25,000.00 a year. In addition, the sublessee agreed to pay its just proportion of any ad valorem personal property taxes assessed against Metropolitan's leasehold. The Olympic Hotel was constructed upon the leased premises. On March 31, 1936, the sublease was acquired by The Olympic, Inc.

During the year 1952, the University of Washington, as fee owner, was attempting to arrange a long-term disposition of the Olympic Hotel property for the period following the expiration of Metropolitan's lease in November, 1954. To this end the University invited proposals for the lease of the hotel, and a number of highly competitive proposals were submitted by various large hotel operators. All these proposals, except that of The Olympic, Inc., necessarily contemplated a lease commencing November 1, 1954.

The proposal made by The Olympic, Inc., offered, at no cost or expense to the University, to procure from Metropolitan a release to the University of all Metropolitan's right, title and interest in and to the Olympic Hotel property under its lease. Olympic then offered the University to take a new lease directly from it for a term of approximately twenty-two years commencing forthwith. Under this proposal, additional rentals of $725,000.00 would accrue to the University during the period prior to November 1, 1954, which otherwise would not have been forthcoming.

The University was favorably disposed to this proposal and negotiations were undertaken with Metropolitan for the acquisition by the University of Metropolitan's leasehold interest. A letter was written on August 18, 1952, by the Board of Regents of the University to Metropolitan requesting Metropolitan to release to the University its leasehold rights with respect to the Olympic Hotel property. At a meeting of the Board of Directors of Metropolitan, held August 19, 1952, the following resolution was adopted:

"Resolved, the President hereby is authorized to sell to the University of Washington our leasehold rights to that area of the Metropolitan Tract occupied by the Olympic Hotel, including the existing sub-lease, provided an agreement can be reached which is approved by the company's accounting and legal counsel."

On September 8, 1952, an agreement was reached between Metropolitan and the State of Washington, acting through the Board of Regents of the University, whereby petitioner conveyed, quitclaimed, assigned and released to the State of Washington all of the right, title and interest of Metropolitan in and to that portion of the leasehold upon which the Olympic Hotel was located. For this assignment and transfer Metropolitan received from The Olympic, Inc., the sum of $137,000.00. The University then proceeded in accordance with its understanding to lease the property to The Olympic, Inc.

Metropolitan's president, asked as to how the sum of $137,000.00 had been computed, testified that roughly it covered $53,000.00 ground rent, $44,000.00 as Metropolitan's just proportion of the ad valorem personal property tax assessed against Metropolitan's leasehold, and $40,000.00 for increased taxes.

The Commissioner contends that this payment is taxable to Metropolitan as ordinary income. He relies upon Hort v. Commissioner, 1940, 313 U.S. 28, 31, 61 S.Ct. 757, 85 L.Ed. 1168, where it is held:

"Where, as in this case, the disputed amount was essentially a substitute for rental payments which § 22(a) [26 U.S.C.A. § 22(a)] expressly characterizes as gross income, it must be regarded as ordinary income * * *."

In that case the petitioner owned a business building, a portion of which had been leased to the Irving Trust Company for a term of fifteen years at $25,000.00 a year. The Trust Company, finding it

unprofitable to maintain a branch office at that location, paid the petitioner $140,000.00 for cancellation of the lease.

In that case the Trust Company did not acquire any interest of its lessor. It simply compromised and liquidated its rental obligation under the lease. The sum received by the lessor was in lieu of the rentals which the Trust Company otherwise was obligated to pay and was not compensation for acquisition of any interest of the lessor.

In the case before us, the sums paid to Metropolitan were not simply a discharge of Olympic's obligation to pay rental. They were paid for the purchase of Metropolitan's entire leasehold interest. The case is not one of a liquidation of a right to future income as is Hort, but rather it is one of a disposition of income-producing property itself. The giving up of a lease by a tenant fits the legal requirements of a sale or exchange under Internal Revenue Code 1939, 117 (j) 26 U.S.C.A. § 117(j) and a gain realized by the tenant on such a transaction is capital gain. Commissioner of Internal Revenue v. Golonsky, 3 Cir., 1952, 200 F.2d 72, certiorari denied 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366; Commissioner of Internal Revenue v. Ray, 5 Cir., 1954, 210 F.2d 300, certiorari denied 348 U.S. 829, 75 S.Ct. 53, 99 L.Ed. 654; Commissioner of Internal Revenue v. McCue Bros. & Drummond, Inc., 2 Cir., 1954, 210 F.2d 752, certiorari denied 348 U.S. 829, 75 S.Ct. 53, 99 L.Ed. 654; Walter H. Sutliff, 1942, 46 B.T.A. 446.

In Golonsky the court stated the problem of the case as follows:

"A tenant in possession of premises under a lease, upon receipt of payment by the landlord, and pursuant to an agreement made with the landlord, 'vacated and surrendered the premises' before the date at which the lease expired." 200 F.2d at page 73.

It was held that the proceeds of the transaction constituted capital gain.

The Commissioner would (and the Tax Court did) distinguish Golonsky upon the ground that in the instant case the consideration passed not from the lessor but from the sublessee, the very party obliged to pay rental to the recipient, and that such consideration represented the amount which the recipient felt it would otherwise have received under the sublease. Further, it is said, the value of the leasehold was fixed and limited by the rentals due under the sublease since the term of the sublease corresponded with that of the lease.

We are not impressed by this proposed distinction. The lease clearly had value over the amount of rentals due by virtue of the fact that its acquisition was of importance to Olympic. Irrespective of the method used by Metropolitan in arriving at the figure of $137,000.00, it is clear that Metropolitan did profit to some extent by the transaction. The Commissioner seems to concede[1] that if the consideration had been paid by the University or if the lease had been assigned to a third party the transaction would have constituted a sale by the lessee.

It is not the person of the payor which controls the nature of the transaction in our view. Rather, it is the fact that the transaction constituted a bona fide transfer, for a legitimate business purpose, of the leasehold in its entirety. It did not constitute a release or transfer only of the right to future income under the sublease and the business purpose of the transaction would not have been met by such a release.

We conclude that the sum of $137,000.00, received by petitioner for release of its leasehold, must be held taxable as capital gain and not as ordinary income.

1. "In 1954 the taxpayer sold the remainder of the Metropolitan Tract lease to a third party, and the Tax Court held that the proceeds of the sale were taxable under Section 117 as gain realized from the sale of property. From this adverse decision, the Commissioner has not appealed."

Reversed and remanded for redetermination, in accordance with this opinion, of deficiencies in income and excess profits taxes of petitioner for its taxable year ended June 30, 1953.