**Arthur J. GRAY and Esther Gray, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 79–7253.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided April 16, 1981.

James R. Mayo, Rawles, Hinkle, Finnegan, Carter & Brigham, Ukiah, Cal., for petitioners-appellants.

Stephen Gray, Atty., Washington, D.C., argued for respondent-appellee; M. Carr Ferguson, Asst. Atty. Gen., Washington, D.C. on brief.

Before CHOY and ALARCON, Circuit Judges, and HEMPHILL,* District Judge.

CHOY, Circuit Judge:

Arthur J. Gray (taxpayer) received a total of $68,000 at the time certain lease and management contracts were terminated. In 1972 when the payments were made, taxpayer deducted the amounts as ordinary business expenses. In 1973 when taxpayer recovered the amounts, he treated them as long-term capital gains. The Commissioner of Internal Revenue (Commissioner) asserted that the $68,000 received by taxpayer was ordinary income and accordingly determined a deficiency in taxpayer's 1973 federal income taxes. The Tax Court upheld the

Commissioner, 71 T.C. 95 (1978). We affirm.

BACKGROUND

The facts in this case are undisputed. In 1971, the Gray Joint Venture (partnership), in which taxpayer owned a 90 percent interest, entered into separate lease and management contracts with Hertz, Inc. Pursuant to the agreements, the partnership leased an almond orchard from Hertz for an annual rental of $10,000, and Hertz agreed to manage the orchard for an annual management fee of $10,000, or 90 percent of the proceeds from the almond crop, whichever was lesser. The partnership paid Hertz $10,000 advance rent and $10,000 advance management fees in accordance with the terms of the agreements. The partnership deducted the advance payments as business expenses in 1971 and received no income from the orchard in that year.

In 1972, taxpayer and Hertz entered into similar lease and management agreements pursuant to which taxpayer leased and Hertz managed two additional almond orchards. Taxpayer paid $25,000 as advance rent and $25,000 as advance management fees. Taxpayer deducted these amounts as business expenses on his 1972 federal income tax return. Thus, for the years 1971 and 1972, taxpayer paid and deducted a total of $68,000 in advance rent and management fees.[1]

The leases and the management contracts each provided for an initial term of 15 years, subject to taxpayer's right to terminate them between the end of the third year and the end of the eighth year. In the event of termination, Hertz was required to refund to taxpayer the advance rents and management fees that had been paid during the first years of the contracts.

In 1973, Hertz offered to accelerate the partnership's and taxpayer's termination options and they accepted. Hertz thereafter refunded the partnership its $20,000 plus

---

* The Honorable Robert W. Hemphill, United States District Judge for the District of South Carolina, sitting by designation.

1. Taxpayer's allocable share of the payment by the partnership was $18,000.

$2,000 interest. At the same time, Hertz refunded taxpayer his $50,000 plus $5,000 interest.

In taxpayer's 1973 income tax return, he reported his allocable share of the payment to the partnership ($18,000) and the $50,000 he had received individually as long-term capital gain realized from the sale or exchange of a capital asset.[2] The Tax Court rejected taxpayer's treatment of the $68,000 as capital gain on the grounds that: (1) the payment was not received in consideration for the cancellation of the leases within the meaning of I.R.C. § 1241;[3] and (2) even if part of the $68,000 was received in consideration for the cancellation of the leases, because taxpayer had realized a tax savings when he deducted the amount as a business expense in 1971 and 1972, under the "tax benefit rule," he was required to treat the amount as ordinary income when he recovered it in 1973.

### APPLICATION OF I.R.C. § 1241

The central question presented by this appeal is whether the $34,000[4] received by taxpayer upon the termination of the lease agreements was the return of advance rentals taxable to taxpayer as ordinary income or whether the sum was a payment for cancellation of the leases, taxable as capital gain. The termination agreement entered into by taxpayer and Hertz stated:

> [T]he Company will remit to you the full amount of your initial payment in cash in full satisfaction for the termination of your Lease . . . .

Taxpayer argues that under this provision, the payment he received was in consideration for the termination of his rights under the lease. Under the facts and circumstances of this case, we find this argument unpersuasive.

Although the form of the termination agreement entered into by taxpayer and Hertz might suggest that the money was paid in consideration for taxpayer's relinquishment of his leasehold rights, we are not bound by the form of the transaction; rather, we must determine whether § 1241 applies based upon the substance of the transaction. See *Frank Lyon Co. v. United States*, 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978); *Gray and Gray v. Commissioner*, 561 F.2d 753 (9th Cir. 1977).

Under § 1241, an amount paid by a lessor in consideration for the cancellation of a lease represents the cost to the lessor of acquiring a valuable property right and the amount the lessee is willing to accept for the relinquishment of his valuable leasehold interests. In the normal course of business affairs, the amount which is mutually agreeable to both parties is arrived at only after intensive bargaining and negotiation.

In the Tax Court, an officer of Hertz testified that Hertz was in serious financial trouble at the end of 1972. All indications were that Hertz was losing money and that the leases were either valueless or decreasing in value. Because taxpayer had not realized any profit in 1971, only a small profit in 1972, and sustained a loss in 1973, Hertz was not forced to and did not negotiate with taxpayer over the value of his leasehold interests or the consideration that was to be paid as an inducement for their relinquishment. Hertz simply refunded to taxpayer the advance rent that it was obligated to pay whenever the leases were ter-

---

2. Capital assets include all classes of property not specifically excluded by I.R.C. § 1221. *See* Treas. Reg. § 1.1221–1(a). The leases involved herein are not excluded by § 1221 and therefore are capital assets. I.R.C. § 1222(3) defines long-term capital gain as gain from the sale or exchange of a capital asset held for more than one year. It is undisputed that taxpayer held the leases for more than one year.

3. I.R.C. § 1241 provides:

Cancellation of lease or distributor's agreement.

Amounts received by a lessee for the cancellation of a lease, or by a distributor of goods for the cancellation of a distributor's agreement (if the distributor has a substantial capital investment in the distributorship), shall be considered as amounts received in exchange for such lease or agreement.

4. At oral argument, taxpayer conceded that only one-half of the $68,000 was related to the lease agreements and that he was not entitled to capital gain treatment on the $34,000 received upon the termination of the management contracts.

minated and did not pay taxpayer any amount representing the cost to it of acquiring a valuable property right.

Although the money received by taxpayer upon the termination of the leases related to their cancellation, looking at the substance of the transaction, we do not view the amount paid as a bargained-for-sum reflecting the amount Hertz was willing to pay and taxpayer was willing to accept for the transfer of a valuable interest in real property. Rather, we view the amount taxpayer received, which was exactly equal to the amounts prepaid in the first year of the agreements, as the return of advance rent that Hertz was obligated to pay upon termination of the leases, taxable as ordinary income. *See Hort v. Commissioner*, 313 U.S. 28, 61 S.Ct. 757, 85 L.Ed. 1168 (1940).

Taxpayer argues that this case should be governed by our decision in *Metropolitan Building Co. v. Commissioner*, 282 F.2d 592 (9th Cir. 1960), wherein we held that an amount paid by a sublessee to the lessee upon the cancellation of the lease was taxable as capital gain. The facts in *Metropolitan Building*, however, clearly distinguish it from the present case. In *Metropolitan Building*, the lease had value in addition to the amount of rent due thereunder and the amount paid by the sublessee was paid in consideration for a valuable property interest.

We hold that the amount received by taxpayer was not received for cancellation of the lease agreements within the meaning of I.R.C. § 1241. In light of this holding, we need not reach the question whether the tax benefit rule also required taxpayer to recognize the payment in question as ordinary income.

AFFIRMED.